```
           IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF OKLAHOMA

JAY E. RAYNOR,                    )
                                  )
            Plaintiff,            )
                                  )
v.                                )      Case No. CIV-17-014-RAW-KEW
                                  )
NANCY A. BERRYHILL, Acting        )
Commissioner of Social            )
Security Administration,          )
                                  )
            Defendant.            )
```

## REPORT AND RECOMMENDATION

Plaintiff Jay E. Raynor ("Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 49 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as a poultry farm laborer, supervisor and forklift operator, heavy equipment operator, and millwright. Claimant alleges an inability to work beginning April 30, 2013 due to limitations caused by back disorders including degenerative disc disease, gastrointestinal system problems, and hypertension.

### Procedural History

3

On September 30, 2013, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On February 17, 2015, a hearing was held before Administrative Law Judge ("ALJ") Doug Gabbard, II in McAlester, Oklahoma. By decision dated August 3, 2015, the ALJ found that Claimant was not disabled during the relevant period and denied Claimant's request for benefits. On November 7, 2016, the Appeals Council denied review of the ALJ's decision. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform medium work with limitations.

### Errors Alleged for Review

Claimant, acting *pro se* in this appeal, asserts the ALJ committed error in failing to properly consider the evidence of his impairments and disability. He also expresses concern about the

level of representation he received from an organization identified as Premier Disability, LLC in Minneapolis, Minnesota.

### Consideration of the Medical Record

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease of the spine and essential hypertension. (Tr. 11). He concluded Claimant retained the RFC to perform medium work except that Claimant could occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds, stand/walk for about six hours out of an eight hour workday, and sit for six hours out of an eight hour workday. The ALJ determined Claimant must avoid even moderate exposure to humidity, temperature extremes, fumes, dust, odors, gases, and other pulmonary irritants. (Tr. 14). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of hand packager and linen room attendant, both of which the vocational expert testified existed in sufficient numbers in the national and regional economies. (Tr. 21). As a result, the ALJ determined Claimant had not been under a disability from April 30, 2013 through the date of the decision. Id.

Claimant contends the ALJ failed to consider the severity and totality of his limiting conditions. Claimant testified at the administrative hearing that he was previously employed as a heavy equipment operator. He quit working in 2012 because of back issues

5

and pain. He also stated his breathing was "really hard." Claimant stated he had back surgery in 2001 and had a partial disc removal. (Tr. 34). He reinjured his back and had a lot of pain. He testified he took hydrocodone for the condition. He has not explored further surgery. (Tr. 35). Claimant stated he was being treated by Dennis Carter in Poteau, Oklahoma. He has not referred Claimant to an orthopedist. He stated that there is no cure for his breathing problems. The ALJ in his questioning acknowledged that a consultative examination revealed normal respiration. (Tr. 36). Claimant contradicted this finding, stating he had to use Albuterol or a rescue inhaler. When he was in the hospital for pneumonia, Claimant testified they told him he "had the lungs of a 70-year-old man." He stated he had been in the hospital five or six times due to his lung condition. (Tr. 37). He testified he used a rescue inhaler three times a day. Claimant used a nebulizer two to three times per week. He spends a lot of time in bed because of his breathing problems and stomach problems. (Tr. 38). When he was working, Claimant testified he missed work three days a week due to medical problems until he was laid off. (Tr. 39).

Upon examination by his counsel, Claimant testified that his pulmonary medication caused him to shake. (Tr. 40). His diarrhea, constipation, and nausea interferes with his ability to work. He stated that taking hydrocodone would not be permitted when working

with heavy machinery. (Tr. 41). He stated that his rheumatoid arthritis would cause pain in his fingers and hands which would interfere with his ability to work. He found bending, lifting, and stooping to be painful. (Tr. 42). Claimant stated he would miss three days out of a five day workweek. (Tr. 43). He testified that he had been taking hydrocodone since 2000 but he did not take it when he operated heavy machinery. He had not been attended by a pain management physician - only Dr. Carter who, together with another physician before him, had been prescribing him hydrocodone for 14 years. (Tr. 44-45). He also testified that he had not taken hydrocodone since 2013 - only over-the-counter medicine. (Tr. 46).

On April 4, 2013, Claimant was treated by Lois Gotes, a nurse practitioner with Dr. Carter. She noted diagnoses of essential hypertension, ulcerative colitis, and depression. (Tr. 291). Claimant exhibited a normal respiratory rate and rhythm with no distress and normal percussion with no rales, rhonchi, wheezes, or rubs. His gait was normal as was his tone and strength. (Tr. 293-94).

On April 18, 2013, Ms. Gotes made the same findings with fatigue. (Tr. 297). Claimant was under no distress. (Tr. 295).

In July of 2013, Claimant was attended by Dr. Carter for wrist pain and blood pressure problems. (Tr. 299-302).

In April of 2014, Claimant was seen in the emergency room for sinus pain and swelling on the left side of his face. He was diagnosed with sinusitis and an upper respiratory infection. (Tr. 309). This represents the entirety of the treatment record through the date of last insured, September of 2014.

In May of 2015, Claimant underwent pulmonary function studies with Dr. Maher Dahdel. He found Claimant had moderate to severe breathing issues with an FEVI of 3.82. (Tr. 332-36).

On December 24, 2013, an unidentified state agency consulting reviewer made findings of functional limitations consistent with the ALJ's RFC. (Tr. 57-58). Dr. Robin Rosenstock also reviewed Claimant's records to reach the same findings on an RFC. (Tr. 86-88).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related

activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence, including the opinions of the state agency reviewers. Moreover, Claimant's treatment record does not support further functional restrictions in the RFC.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.

The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 16th day of January, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE